IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVELINE EISAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>WELLS FARGO BANK,<br><br>　　　　Defendant._____/ | No. C -12-01331(EDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

## I. Introduction and Procedural Background

This is a mortgage foreclosure case in which Plaintiff Eveline Eisan alleges claims for fraud, breach of agreement, to cancel the trustee's deed, and to quiet title against her lender, Wells Fargo Bank, N.A., also known as Wachovia Mortgage, and Cal-Western Reconveyance Corporation, the substituted trustee that conducted a trustee's sale. The crux of Plaintiff's complaint is that Wachovia promised her orally and in writing that it would not sell her house in a foreclosure sale while her request for loan modification was being evaluated or 30 days after denial of a modification, but her house was sold in foreclosure during this period in breach of this promise.

Plaintiff's second amended complaint ("SAC") asserts claims for fraud, breach of agreement, to cancel the trustee's deed and to quiet title. Dkt. # 46. Defendants move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6) based on failure to properly plead fraud or breach of contract, failure to tender, and because the alleged promise is not a valid basis for invalidating the deed upon sale. Dkt. # 47. Plaintiff filed an opposition to the motion to dismiss (Dkt. # 55) and thereafter the Court granted Plaintiff's counsel's motion to withdraw as counsel (Dkt. # 57), leaving Plaintiff now unrepresented. Defendant Wells Fargo filed a reply, and Defendant Cal-Western has filed a "joinder" to Wells Fargo's motion. For the following reasons,

1  Defendants' motion to dismiss the fraud claim is DENIED. The motion to dismiss the breach of
2  agreement claim is GRANTED WITHOUT LEAVE TO AMEND.

## II. Background

Plaintiff purchased property known as 673 Jennie Court, Lafayette, California (the "property") in July 2000 and she resided on the Property until June 2012. FAC. ¶ 1-2. On July 12, 2000, Plaintiff executed a Promissory Note in favor of World Savings Bank in the amount of $455,000. Id. ¶ 9. On the same date, Plaintiff executed a Deed of Trust on the Property naming World Savings Bank as the beneficiary. Id. ¶ 10; see also RJN Ex. A. On January 2, 2007, World Savings Bank recorded a Notice of Default and Election to Sell, alleging a breach of the obligation secured by the Deed of Trust and electing to sell the Property to satisfy the obligation. Id. ¶ 11, Ex. B; see also RJN Ex. G. In July 2011, Plaintiff requested a loan modification pursuant to the Home Affordable Modification Program ("HAMP") from Wachovia Mortgage. Id. ¶ 12. Wachovia informed Plaintiff's husband at some time between July 29 to August 1, 2011 that her loan met the initial criteria for modification under HAMP and it would conduct a HAMP evaluation. Id. ¶ 13. Wachovia also informed Plaintiff's husband over the phone during the initial interview regarding Plaintiff' modification request that "'no foreclosure sale will be conducted and you will not lose your home' while the loan modification process was proceeding, and if there was a denial, that Plaintiff would be given a 30-day period in which to appeal the decision. Id. ¶ 14. Wachovia also represented to Plaintiff in writing on August 1 that, "if the loan modification were not granted, Plaintiff would have at least 30 days to have any denial reviewed" and that her home would not be sold at a foreclosure sale during this period. Id. ¶ 15, Ex. C.

In August and September 2011, Plaintiff submitted additional documentation in support of her modification request in response to requests from Wachovia. SAC ¶ 16-19. During this period, Plaintiff was led to believe that she would qualify for a modification and foreclosure would not take place during the process or for at least 30 days after a denial and that failure to timely submit documentation would not disqualify her for a modification. SAC ¶ 18.

In a letter dated September 30, postmarked October 4, and received on October 8, 2011, Wachovia notified Plaintiff that it would not offer her a loan modification based on Plaintiff's failure

2

to provide all required documentation. Id. ¶ 14. Plaintiff alleges that she had in fact provided all required documentation, and informed Wachovia of this fact on October 8, 2011. Id. ¶¶ 19, 21. However, on October 13, 2011, Wachovia conducted a Trustee's sale of the property through Cal-Western Reconveyance Corporation as substituted trustee. Id. ¶ 23. A Notice of Trustee's Sale had previously been recorded on October 15, 2010 (see SAC Ex. E; RJN Ex. H) and the October 13, 2011 sale was conducted two days before the one-year expiration without further notice to Plaintiff. FAC ¶¶ 24. There were no third-party bidders at the sale and the property was transferred to Wells Fargo Bank, N.A. at the sale. Id. ¶ 26; see also RJN Ex I. Plaintiff's husband called Wachovia every day for a week after October 8 to follow up, and was finally informed on October 14 that a sale had taken place the day before. SAC ¶ 25.

The Property has a fair market value of more than $850,000, the payoff amount in the Notice of Sale was approximately $631,000, and Wells Fargo's credit bid at the sale was approximately $662,818. Id. ¶ 34. Plaintiff offers to tender:

> all amounts due and owing under the loan modification plan pursuant to HAMP so that the claimed default may be cured and Plaintiff may be reinstated to all former rights and privileges under the Promissory Note and Deed of Trust. Plaintiff alternatively tenders and offers to sell the Subject Property and pay off in total any amounts rightfully owed to Wells Fargo under the subject loan, including all principal, interest, arrearages and property foreclosure fees. Plaintiff is ready, willing and able to tender those sums upon sale of the Subject Property if title is not restored to Plaintiff.

Id. ¶ 41.

Plaintiff alleges that the sale, which took place two days prior to the expiration of the 2010 Notice of Sale and after Wachovia represented that no sale would take place during the HAMP evaluation or 30 days after denial of modification, demonstrates fraud, misrepresentation and bad faith by Wachovia. Id. ¶ 24. She claims that, in reliance on Wachovia's representations and omissions, she "was induced into not taking actions that could have prevented the sale from taking place, including: a) bringing the loan current by obtaining funds from Plaintiff's mother-in-law; b) paying off the loan by obtaining a refinance with another lender; c) the sale of the Subject Property; and/or d) the filing of a bankruptcy petition." Id. ¶ 31; see also ¶ 22.

**III.   Legal Standard**

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to

1 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions." Iqbal, 129 S. Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950. Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Courts must then determine whether the factual allegations in the complaint "plausibly give rise to an entitlement of relief." Id. Though the plausibility inquiry "is not akin to a probability requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not permit the court to infer more than the mere possibility of misconduct . . . ." Id. at 1949 (internal quotation marks omitted) & 1950. That is to say, plaintiffs must "nudge[] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

## IV.     Request for Judicial Notice

In support of its motion to dismiss, Defendant filed a request for judicial notice of various publicly filed documents. See Wells Fargo's RJN. Exs. A-I. In considering a Rule 12(b)(6) motion, a district court generally may not take into account material beyond the complaint. Intri-Plex Technologies, Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). The two exceptions to this rule are: 1) the court may properly take judicial notice of material which is included as part of the complaint or relied upon by the complaint; and 2) the court may properly take judicial notice of matters in the public record. See Lee v. City of Los Angeles, 250 F.3d 668, 688-69 (9th Cir. 2001).

Under Federal Rule of Evidence 201(b), a "judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Furthermore, a court "shall take judicial notice if requested by a party and supplied with the necessary information." See Fed. R. Evid. 201(d); Mullis v. United

4

States Bank, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987). Here, Plaintiff does not challenge the authenticity of the documents contained in Defendant's Request for Judicial Notice and they are judicially noticeable under Federal Rule of Evidence 201.

**V.     Discussion**

    **A.     Fraud**

To establish a cause of action for fraudulent misrepresentation, Plaintiff must plead and prove four elements: (1) a knowingly false representation by Defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by Plaintiffs; and (4) resulting damages. Gutierrez v. Wells Fargo Bank, 2009 WL 322915, at *4 (N.D.Cal. Feb. 9, 2009) (citing Service by Medallion, Inc. v. Clorox Co., 44 Cal.App.4th 1807, 1816 (1996)). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b); Vess v. Ciba–Geigy, Inc., 317 F.3d 1097, 1106 (9th Cir.2003) ("Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.' " Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.") (internal citations omitted).

In its moving papers, Wells Fargo acknowledges that Plaintiff alleges a false representation by Defendant that it would not sell her home for 30 days after denial of a HAMP modification request and detrimental reliance (FAC ¶ 22), but argues that Plaintiff's fraud claim fails because she failed to allege facts suggesting that her reliance was "justifiable." All of Wells Fargo's arguments on this point fail because they are evidentiary, and the Court is limited to allegations in the complaint, coupled with judicially noticeable facts, when ruling on a motion to dismiss.

Specifically, Wells Fargo relies heavily on its assertion that this was Plaintiff's seventh request for loan modification review, so it was unreasonable for her to believe any representation that her property would not go to sale until she appealed a denial of a modification request. However, on a motion to dismiss, the Court cannot consider Defendant's assertion about how many times she had requested a modification previously, whether or not she was granted prior

5

1 modifications, or why they did not foreclose and sell her house in the five years during which she
2 was in default. (Arguably, the "fact" that she may have requested modification several times earlier
3 and her house was never foreclosed on arguably makes it more reasonable for her to believe
4 Defendants' alleged representations that it would not happen this time either.)

5 Defendants also argue that Plaintiff has not adequately alleged actual reliance because, even
6 if true that she would have borrowed funds from another source to bring the loan current (SAC ¶
7 22), she should have done so earlier and it appears that she was attempting to manipulate the interest
8 rate on her loan by remaining in default. However, there is no indication of Plaintiff's ability to
9 repay the loan earlier or her intent in deciding not to do so in the SAC. Defendants also contend
10 that, if Plaintiff had the ability to bring the loan current, she should have done so immediately upon
11 receipt of the letter denying her modification request on October 8, prior to the October 13
12 foreclosure sale. However, taking as true that Plaintiff had the ability to bring the loan current but
13 decided not to do so while the modification request was pending and for a few days after denial, as
14 she alleges, such conduct arguably indicates that she relied on Defendant's representations that it
15 would not sell her home during the review process and a 30 day appeal period.

16 Defendants further argue that Plaintiff has failed to allege any intent to induce reliance
17 because Plaintiff's allegation that Defendants waited until two days before the expiration of the
18 Notice to sell the property is inconsistent with her theory that they intended for her to rely on a
19 promise that they would not sell her house during the modification review process. However, these
20 allegations are not necessarily inconsistent. Defendants also contend that if the house had a $850,000
21 fair market value, as alleged by Plaintiff, Defendants' interest was secure and there was no reason to
22 rush to foreclose. Finally, Defendants argue that, had they known of Plaintiff's alleged plans to
23 borrow from other sources to bring the loan current, sell and pay off the loan, refinance her loan, or
24 declare bankruptcy, they would have had no incentive to induce her to rely on promises that they
25 would not foreclose since any of those options would have been better for them than a foreclosure
26 sale. Both of these arguments, while reasonable, go well beyond the allegations of the SAC, which
27 states generally that Defendants intended to induce Plaintiff's reliance. Defendants' motion to
28 dismiss the fraud claim is DENIED.

6

**B.     Breach of Agreement**

In order to state a breach of contract claim, a plaintiff must plead the following elements: "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages." First Commercial Mortgage Co. v. Reese, 89 Cal. App. 4th 731, 745 (2001). Plaintiff's breach of agreement claim is based on her allegation that Wachovia "breached its written and oral promises to Plaintiff that no foreclosure sale would be conducted and Plaintiff would not lose her home while the loan was being evaluated and that, even if Plaintiff did not qualify for HAMP modification, she would have 30 days to review the reason for non-approval and have an opportunity to discuss the reasons for non-approval with Wachovia during that 30-day period." SAC ¶ 36. The letter relied on as the basis of the written representation states that:

> If your loan has been previously referred to foreclosure, we will continue the foreclosure process while we evaluate your loan for HAMP. However, no foreclosure sale will be conducted and you will not lose your home during the HAMP evaluation. . . . If you do not qualify for HAMP, or f you fail to comply with the terms of the Trial Period Plan, you will be sent a Non-Approval Notice. In most cases, you will have 30 days to review the reason for non-approval and contact us to discuss any concerns you may have. If your loan has been previously referred to foreclosure, during this 30-day review period we may continue with pending foreclosure action, but no foreclosure sale will be conducted and you will not lose your home.

SAC Ex. C.

As an initial matter, while the letter relied on by Plaintiff states that "in most cases" borrowers will have 30 days to review the reasons for non-approval prior to a foreclosure sale, this statement is too indefinite on its own to constitute an enforceable written contract. More importantly, Defendants point out that the Deed of Trust itself requires that modifications be in writing and signed by both parties, and there is no dispute that Plaintiff did not sign the August 1 letter on which she relies as the basis for her contract claim. See RJN Ex. A at paragraph 23. Therefore, this contract claim fails as a matter of law.[1]

---

[1] Defendants also argue that any alleged written agreement is subject to the statute of frauds because it purports to modify the terms of the Deed of Trust – which is also subject to the statute of frauds – by altering the lender's ability to exercise a right to foreclose. See Secrest v. Security National Loan Trust, 167 Cal. App. 4th 544, 553 (2008) (forbearance agreement modified deed of trust and thus both er subject to statute of frauds). Since an agreement subject to the statute of frauds requires a signed writing, and the letter is not signed in handwriting, Defendants contend that it fails to satisfy the statute of frauds. However, the letter is on Wachovia letterhead and concludes with "Sincerely, Sharon Zuniga, Senior Vice President, Wachovia Mortgage." SAC Ex. C. This is a sufficient signature for

7

Plaintiff's breach of oral agreement also fails as a matter of law. Generally, an oral representation promising to forestall foreclosure is governed by the statute of frauds because it purports to alter the lender's ability to exercise a right to foreclose. See Nguyen v. Calhoun, 105 Cal.App.4th 428, 444 (2003); Seacrest v. Security National Loan Trust, 167 Cal. App. 4th 544, 553 (2008). Plaintiff contends that an oral agreement subject to the statute of frauds is enforceable where there is consideration and full performance by the promisee. See Raedeke v. Gibralter Savings and Loan Assn., 10 Cal. 3d. 665 (1974) (plaintiffs effort in procuring a third-party purchaser for the property constituted sufficient detriment to plaintiff and benefit to defendant to serve as consideration for forbearance promise). Plaintiff argues that her effort in preparing and submitting documents in support of the loan modification request and the benefit to Defendants in potentially being able to modify the loan instead of taking back the property constitute consideration. However, any alleged benefit to Defendants is too uncertain to constitute consideration, because Plaintiff could have rejected any proposed modification terms even if a modification had been offered. Further, Plaintiff was already obligated to make payments under terms more favorable than any possible modification, so there would be no benefit to Defendants by offering a modification. See id. at 674 n.3 (creditor's promise to give an extension of time is unenforceable if the only consideration is a promise to pay a portion of a debt or the debt at the end of the extension). The alleged oral agreement lacks consideration and therefore fails to satisfy the statute of frauds.

Alternatively, Plaintiff argues that a promise not to foreclose does not require any consideration, relying on Wade v. Markwell & Co., 118 Cal. App. 2d 410, 419 (1953). In Wade, the court found that a breach of agreement claim based on a promise not to sell a mink coat for a specified period of time did not fail for lack of consideration because the doctrine of promissory estoppel excused consideration. "The elements of a promissory

---

purposes of the statute of frauds. See Marks v. Walter G. McCarty Corp., 33 Cal.2d 814, 820 (1949) (The signature of the party to be charged "need not be manually affixed, but may in some cases be printed, stamped or typewritten"); Khan v. America, 2011 WL 5079510, * 4 (N.D.Cal. Oct.25, 2011) (holding that loan modification agreement letter with Bank of America's electronic signature complied with the statute of frauds); Rampp v. Ocwen Financial Corp., 2012 WL 2995066, *2 -3 (S.D.Cal. 2012) (letter on loan servicing company letterhead that lacked handwritten signature but closed with the typed words "Sincerely, Prommis Solutions as authorized agent for Litton Loan Servicing LP" satisfied statute of frauds).

8

estoppel claim are '(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3)[the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.'" Aceves v. U.S. Bank, N.A., 192 Cal.App.4th 218, 225 (2011) (quoting Advanced Choices, Inc. v. State Dept. of Health Services, 182 Cal.App.4th 1661, 1672 (2010)). The written statement that "in most cases" mortgagees will be afforded 30 days after denial of a loan modification before their house is sold in a foreclosure sale is not a clear and unambiguous promise. For all of the foregoing reasons, Plaintiff's breach of agreement claim is dismissed with prejudice.

### C. Claims to Cancel Deed of Trust and Quiet Title

Defendants first argue that the claim to cancel the deed of trust and quiet title fail because breach of a promise not to foreclose is not a valid basis to set aside a trustee's sale. Defendants rely on Nguyen v. Calhoun, 105 Cal.App.4th 428, 439 (2003), where a court refused to set aside a trustee's sale based on an oral agreement to postpone the sale on the condition that the plaintiff notify the lender that a third party had sufficient funds to pay off the loan, where the plaintiff failed to fulfill its obligation to the lender. However, Nguyen does not stand for the broad proposition that a fraudulent promise to postpone a foreclosure sale can never form the basis for setting aside a sale, and there is caselaw indicating otherwise. See Raedeke v. Gibralter Savings and Loan Assn., 10 Cal. 3d. 665.

Defendants more persuasively argue that these claims fail for lack of tender. "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971); see also Arnolds Management Corp. v. Eischen, 158 Cal.App.3d 575, 578 (1984) ("It is settled that an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security."). California district courts apply the tender rule in examining wrongful foreclosure claims. Anaya v. Advisors Lending Group, 2009 WL 2424037, at *10 (E.D. Cal. Aug. 3, 2009) ("Plaintiff offers nothing to

9

indicate that she is able to tender her debt to warrant disruption of non-judicial foreclosure"); Alicea v. GE Money Bank, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) ("When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for foreclosure."); Montoya v. Countrywide Bank, 2009 WL 1813973, at * 11-12 (N.D. Cal. June 25, 2009) ("Under California law, the 'tender rule' requires that as a precondition to challenging a foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt"). The application of the "tender rule" prevents "a court from uselessly setting aside a foreclosure sale on a technical ground when the party making the challenge has not established his ability to purchase the property." Williams v. Countrywide Home Loans, 1999 WL 740375, at *2 (N.D. Cal. Sept. 15, 1999); see also Benham v. Aurora Loan Servs., C-09-2059 SC (N.D. Cal. Oct. 1, 2009) (granting a motion to dismiss a wrongful foreclosure claim because the plaintiff failed to allege a credible tender offer).

"The rules which govern tenders are strict and are strictly applied." Nguyen v. Calhoun, 105 Cal.App.4th 428, 439 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." Gaffney v. Downey Savings & Loan Assn., 200 Cal.App.3d 1154, 1165 (1988) ("An offer of partial payment is of no effect.") (internal quotation marks omitted). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." Gaffney, 200 Cal.App.3d at 1165; see also Aguilar v. Bocci, 39 Cal. App. 3d 475, 478 (1974) (stating that a trustor cannot "quiet title without discharging his debt. The cloud upon his title persists until the debt is paid. He is entitled to remain in possession, but cannot clear his title without satisfying his debt."); Karlson, 15 Cal.App.3d at 117 ("'. . . It is apparent from the general tenor of the decisions that an action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a

10

court of equity would recognize.'") (quoting <u>Leonard v. Bank of America</u>, 16 Cal.App.2d 341, 344 (1936)). An offer of tender must be "unconditional" to be valid. <u>Arnolds Management Corp. v. Eischen</u>, 158 Cal. app. 3d 575, 580 (1984).

Here, Plaintiff offers to tender:

> all amounts due and owing under the loan modification plan pursuant to HAMP so that the claimed default may be cured and Plaintiff may be reinstated to all former rights and privileges under the Promissory Note and Deed of Trust. Plaintiff alternatively tenders and offers to sell the Subject Property and pay off in total any amounts rightfully owed to Wells Fargo under the subject loan, including all principal, interest, arrearages and property foreclosure fees. Plaintiff is ready, willing and able to tender those sums upon sale of the Subject Property.

SAC 41. Thus, the tender offer is expressly limited to the amount due under the loan modification plan, not the full amount of indebtedness which is what is required. See <u>Lawrence v. Aurora Loan Svcs. LLC</u>, 2010 U.S. Dist. LEXIS 5373 (E.D.Cal. Jan, 25, 2010), *16 (tender rule requires tender of indebtedness, not loan reinstatement). Plaintiff's alternative offer to tender upon sale of the Property is plainly contingent and insufficient, where the Property has already been sold at foreclosure and is no longer in her name. Therefore, Plaintiff has not satisfied the tender requirement to the extent it applies.

However, Plaintiff argues that the tender rule should not apply in this case where she has alleged fraudulent conduct. Plaintiff cites <u>Lona v. Citibank</u>, 202 Cal. App. 4th 89, 112-113 (2011), which listed four exceptions to the tender rule: (1) "if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt;" (2) "a tender will not be required when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary. In such cases, it is deemed that the tender and the counter claim offset one another, and if the offset is equal to or greater than the amount due, a tender is not required;" (3) "a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale;" and (4) "no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face." Plaintiff also relies on <u>Barrionuevo v. Chase Bank, N.A.</u>, 2012 WL 3235953, *3-4 (N.D.Cal. Aug. 6, 2012), which held that the tender rule did not apply at the pleading stage in a pre-foreclosure case where the plaintiffs challenged the validity of a pending foreclosure sale as void, as opposed to

11

merely voidable, where it would be inequitable to apply the rule. See also Tamburri v. Suntrust Mortgage, 2011 WL 6294472, *3-5 (N.D. Cal. Dec. 15, 2011) (Chen, J) (same). Plaintiff argues that the third and fourth exceptions listed in Lona apply to her case because it would be inequitable to impose a tender requirement where she alleges fraudulent conduct, potentially making the foreclosure sale void. However, the cases excusing the tender requirement in the face of fraud allegations are primarily *pre*-foreclosure cases challenging the defendant's authority to initiate foreclosure proceedings in the first instance, not cases such as this one where a foreclosure sale has already occurred. Further, even taking Plaintiff's allegations regarding promises to postpone the foreclosure sale as true, the sale would be "voidable," not "void" to excuse the tender requirement, because the terms of the Deed of Trust could only be modified by a writing signed by both parties, and the letter was not signed by Plaintiff. See Strutt v. Ontario Sav. & Loan Assn., 11 Cal.App.3d 547, 554 (1970) (fraudulent conduct would render a sale voidable, not void). Therefore, the claims are also dismissed with prejudice.

Since these are the only claims asserted against Cal-Western Reconveyance Corporation, this Defendant is hereby dismissed from the case.

IT IS SO ORDERED.

Dated: February 15, 2013

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge