IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EVELINE EISAN,

        Plaintiff,

  v.

WELLS FARGO BANK,

        Defendant.
                                     /

No. C -12-01331(EDL)

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant moves for summary judgment on Plaintiff's remaining fraud claim. For the reasons set forth below, the Court grants Defendant's motion.

**I.    Background**

On July 12, 2000, Plaintiff Eveline Eisan borrowed $455,000 from World Savings to purchase the property known as 673 Jennie Court, Lafayette, California. (Second Amend. Compl. ("SAC") ¶¶ 1-2, 9.) World Savings Bank subsequently changed its name to Wachovia Mortgage and merged into Defendant Wells Fargo in 2009. (10/12/12 Request for Judicial Notice ("RJN") Exs. B-F, Dkt. 30.) Plaintiff's loan was secured by a deed of trust. (Armstrong Decl. Ex. A.) Plaintiff defaulted on her loan, and on January 2, 2007, Defendant recorded a "Notice of Default and Election to Sell under Deed of Trust." (Armstrong Decl. Ex. C.) On October 15, 2010, Cal-Western Reconveyance Corporation, a substitute trustee, recorded a "Notice of Trustee's Sale." (10/12/12 RJN Ex. I.) The notice stated that Cal-Western Reconveyance would sell Plaintiff's property on November 4, 2010. (Id.)

On July 29, 2011, Plaintiff's husband, Daniel Eisan ("Eisan"), applied on Plaintiff's behalf for a loan modification under the Home Affordable Modification Program ("HAMP"). (SAC ¶¶ 12-13, Dolan Decl. Ex. A at 1-2; D. Eisan Decl. ¶ 2.) At all relevant times, Eisan acted as Plaintiff's

agent. (D. Eisan Decl. ¶ 2; E. Eisan Dep. at 15, Armstrong Decl. Ex. H.) Eisan spoke with Defendant's Home Preservation Specialist, Jarrod Brower during the July 29, 2011, telephone call, and thereafter repeatedly through the fall of 2011. Plaintiff alleges that during this initial interview, Brower stated that "no foreclosure sale will be conducted and you will not lose your home" while the loan modification process was proceeding, and if Plaintiff's modification application was denied, that Plaintiff would be given a 30-day period in which to appeal the decision. (SAC ¶ 14.) Eisan states in his declaration that Brower repeatedly represented "that Defendant would not conduct a foreclosure sale while the process was proceeding, and that Plaintiff would be given a 30 day period in which to appeal any denial of the modification." (D. Eisan Decl. ¶ 2.) Brower asked Eisan to submit several documents as proof of unemployment, including Plaintiff's most recent unemployment award letter and her two most recent bank statements. (Armstrong Decl. Ex. B. at 2.)

On August 1, 2011, Defendant sent Plaintiff a letter stating that it was evaluating her mortgage for HAMP eligibility. (Dolan Decl. Ex. D.) The letter stated that if Plaintiff was not eligible for HAMP, she would be sent a Non-Approval Notice, and that "[i]n most cases, you will have 30 days to review the reasons for non-approval." (Id.) On August 10, 2011, Brower sent Plaintiff a letter notifying her that she had not provided all the requested documents. (Dolan Decl. Ex. E.) The letter indicated that Plaintiff needed to submit, among other things, her most recent unemployment award letter. It also stated that if Plaintiff did not submit the documents by September 9, 2011, "the modification request will be considered withdrawn." (Id.) Brower spoke with Eisan about this letter on August 23, 2011. (Dolan Decl. Ex. A; D. Eisan Decl. ¶ 4.) During this call, Eisan and Brower discussed what type of documents Plaintiff needed to submit to establish that she received unemployment because Plaintiff did not have the award letter that Brower requested. (D. Eisan Decl. ¶ 4; E. Eisan Decl. ¶ 2.) Eisan proposed to Brower that he submit Plaintiff's recent check stubs from her unemployment payments, but Brower stated that check stubs would not be sufficient. (D. Eisan Decl. ¶ 4.) Rather, Brower asked Eisan to have Plaintiff write a letter explaining the benefits, and he discussed what letter should contain. Eisan faxed documents to Brower on August 30, 2011. (D. Eisan Decl. Ex. A.) The documents did not include Plaintiff's most recent unemployment award letter. (Id.)

2

On September 13, 2011, Brower sent Plaintiff another letter stating that he had not received the documentation he needed. (Dolan Decl. Ex. G.) He stated that if he did not receive the required documents by September 28, 2011, Plaintiff's modification request would be deemed withdrawn. Brower spoke with Eisan on September 15 and 20, 2011. (Dolan Decl. Ex. A; D. Eisan Decl. ¶ 5.) Brower stated that he needed four more letters, and he and Eisan discussed the content of the letters. (D. Eisan Decl. ¶ 5.) Brower told Eisan that if he could not fax the letters by the September 28, 2011 deadline, Plaintiff would still have the "the 30 day period in which Defendant would not conduct a sale, and that [Eisan] could simply re-apply with him directly and they would re-submit a request for modification." (Id.) Eisan informed Brower that he did not want to have to re-submit an application and promised that Plaintiff would send the requested documents. (Id.) Eisan faxed documents to Defendant on September 26, 2011. (Armstrong Decl. Ex. F.) The faxed letters did not include Plaintiff's most recent unemployment award letter.

On September 30, 2011, Plaintiff's loan modification application was moved to Defendant's "fallout queue for failure to submit required documents." (Dolan Decl. ¶ 25.) On October 4, 2011, Brower sent Plaintiff a Non-Approval Notice dated September 30, 2011. (Dolan Decl. Ex. G; D. Eisan Decl. Ex. C.) It said that Defendant was unable to offer Plaintiff a loan modification because she did not submit the documents that Brower requested. (Id.) Consequently, Defendant deemed the loan modification request withdrawn. (Id.) Brower sent another letter to Plaintiff dated September 30, 2011, notifying her that the normal collections process would resume "if appropriate," including phone calls and notices from Defendant. (Dolan Dec. Ex. H.) Plaintiff did not receive that letter. (E. Eisan Decl. ¶ 5.) After Plaintiff received the Non-Approval Notice, Eisan attempted to reach Brower for five days to submit proof that he had faxed the requested documents. Defendant purchased the property at a trustee's sale on October 13, 2011, for $662,818.85. (Armstrong Decl. Ex. D.) Plaintiff was evicted by Defendant in June 2012. (SAC ¶ 2.)

**II.    Procedural History**

On March 12, 2012, Plaintiff, while represented by counsel, sued Defendants Wells Fargo Bank, N.A. and Cal-Western Reconveyance in the Superior Court of Contra Costa County. Plaintiff brought claims to set aside the trustee's sale, to cancel the trustee's deed, and to quiet title.

3

1  Defendant Wells Fargo removed the case on March 16, 2012. Plaintiff filed a first amended
2  complaint ("FAC") on April 16, 2012. This complaint alleged claims for fraud, breach of
3  agreement, to cancel the trustee's deed, and to quiet title. (Dkt. 11.) The Court granted Defendant
4  Wells Fargo's motion to dismiss the FAC and gave Plaintiff until December 11, 2012, to file an
5  amended complaint.

6  Plaintiff filed a second amended complaint ("SAC") on December 10, 2012, alleging claims
7  for fraud, breach of contract, to cancel the trustee's deed, and to quiet title against Defendants Wells
8  Fargo and Cal-Western Reconveyance. Defendants moved to dismiss the SAC. While the motion
9  was pending, the Court granted Plaintiff's counsel's motion to withdraw. On February 19, 2013, the
10 Court granted in part and denied in part Defendants' motion to dismiss. (Dkt. 63.) The Court
11 dismissed Plaintiff's claims for breach of contract, to cancel the deed of trust, and to quiet title with
12 prejudice. Because these were the only claims against Defendant Cal-Western Reconveyance, the
13 Court dismissed it from the case. The Court declined to dismiss Plaintiff's fraud claim.

14 Defendant moved for summary judgment on Plaintiff's fraud claim on February 25, 2014.
15 Plaintiff, proceeding pro se, opposed the motion. The Court held a hearing on April 14, 2014.
16 Plaintiff did not appear at the hearing, but the Court allowed attorney Scott Levine to specially
17 appear to argue the motion on Plaintiff's behalf even though he had not complied with the requisite
18 procedures for doing so.

19 **III.   Discussion**

20 A.   Summary Judgment Standard

21 Summary judgment shall be granted if "the pleadings, discovery and disclosure materials on
22 file, and any affidavits show that there is no genuine issue as to any material fact and that the
23 movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those
24 which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
25 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury
26 to return a verdict for the nonmoving party. Id. The court must view the facts in the light most
27 favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn
28 from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The

4

court must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999).

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Id. If the moving party meets its initial burden, the opposing party "may not rely merely on allegations or denials in its own pleading"; rather, it must set forth "specific facts showing a genuine issue for trial." See Fed. R. Civ. P. 56(e)(2); Anderson, 477 U.S. at 250. If the nonmoving party fails to show that there is a genuine issue for trial, "the moving party is entitled to judgment as a matter of law." Celotex, 477 U.S. at 323.

A party asserting that a fact is genuinely disputed must support the assertion by citing specific admissible evidence, including depositions, documents, or declarations. Fed. R. Civ. P. 56(c)(1)(A); FTC v. Publishing Clearinghouse, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."). Speculation does not suffice to create a genuine factual dispute on summary judgment. Nelson v. Pima Community Coll., 83 F.3d 1075 (9th Cir. 1996). Any declaration used to support or oppose a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

B. Fraud

Plaintiff alleges in the second amended complaint that Defendant, through Brower, intentionally or negligently misrepresented to Plaintiff that it would not sell Plaintiff's property during the loan modification process or within 30 days after a denial of a loan modification request. To establish a cause of action for fraudulent misrepresentation, Plaintiff must plead and prove four

elements: (1) a knowingly false representation by Defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by Plaintiff; and (4) resulting damages. Gutierrez v. Wells Fargo Bank, Case No. 08-5586 SI, 2009 WL 322915, at *4 (N.D. Cal. Feb. 9, 2009) (citing Service by Medallion, Inc. v. Clorox Co., 44 Cal. App. 4th 1807, 1816 (1996)).  The elements for negligent misrepresentation are: (a) a misrepresentation of a past or existing material fact; (b) made without reasonable ground for believing it to be true; (c) made with the intent to induce another's reliance on the fact misrepresented; (d) justifiable reliance on the misrepresentation ; and (e) resulting damage. Nada Pacific Corp., v. Power Eng'r & Mfg. Ltd., Case No. 13-4325 LB, 2014 U.S. Dist. LEXIS 17260, at *34 (N.D. Cal. Feb.10, 2014.)

1. *Falsity of Representations*

Defendant argues that Plaintiff cannot raise a triable issue that Defendant's representations were false. Taking all reasonable inferences in Plaintiff's favor, Plaintiff asserts that Defendant made the following representations: (1) Defendant would not conduct a foreclosure sale while the HAMP evaluation process was proceeding; (2) Plaintiff would be given a 30-day period to appeal the denial of any loan modification; (3) in most cases, Plaintiff would have 30 days to review the reason for non-approval following a non-approval Notice; (4) if Plaintiff did not fax certain letters by the September 28, 2011, deadline, she would still be given 30 days before Defendant would conduct a sale. It is undisputed that Defendant did not give Plaintiff a 30-day foreclosure hold; the property was sold a trustee's sale on October 13, less than 30 days after the September 28, 2011 deadline to submit additional documents or the September 30, 2011 Non-Approval Notice.

Defendant is entitled to summary judgment as to representations (1), (3), and (4).  There is no evidence that the statement that Defendant would not conduct a foreclosure sale while the HAMP evaluation process was proceeding was false.  The HAMP evaluation process ended on September 30, 2011, and the property was not sold until October 13, 2011.  Consequently, there was no foreclosure sale during the HAMP evaluation process.  Similarly, Plaintiff has not shown that the statement that "in most cases," Plaintiff would have 30 days to review the reason for a Non-Approval Notice before a foreclosure sale is false.  The statement on its face falls short of a guarantee that she would be given a 30-day grace period, and Plaintiff submitted no evidence

6

regarding the relative frequency of foreclosure holds following a Non-Approval Notice. Plaintiff also cannot raise a triable issue of falsity as to Brower's statement that she would receive a 30-day foreclosure hold if she did not fax him letters by the September 28, 2011 deadline. Plaintiff claims that she did fax the letters by the deadline and has not shown what would have happened if she had not faxed the letters.

Plaintiff has, however, raised a triable issue of falsity as to Brower's statement that she would receive a 30-day foreclosure hold following a denial of her loan modification application. Defendant argues that Plaintiff cannot show that this statement is false because it did not deny Plaintiff's loan modification application but instead considered her loan withdrawn when she failed to submit documentation of her unemployment. Under the HAMP Handbook, Defendant notes, a non-approval notice does not generate a 30-day foreclosure hold when the reason for non-approval is an ineligible mortgage, ineligible property, or the "offer not accepted by borrower/request withdrawn." (HAMP Handbook § 2.3.2, 2/26/14 RJN Ex. A.)[1] The HAMP Handbook also provides that if a borrower is unresponsive to requests for documentation, "the servicer may discontinue document collection efforts and determine the borrower to be ineligible for HAMP." (Id. § 2.3.3.) Plaintiff argues that the HAMP Handbook is irrelevant because all that matters is what Defendant told Eisan, Plaintiff did not withdraw her loan modification application, and HAMP does not allow Defendant to deem a loan modification application withdrawn.

A jury could reasonably infer that Defendant's unilaterally deeming Plaintiff's loan modification application withdrawn constituted a denial of her application. It is undisputed that no one explained the difference to Plaintiff or her husband. Although Defendant's August 10 and September 13 letters state that if Brower did not receive requested documents by certain deadlines, "the modification request will be considered withdrawn," and the September 30, 2011, Non-Approval Notice states that Plaintiff withdrew her request for a loan modification request "by not returning the required documents," Plaintiff conveyed that she did not want to resubmit her

---

[1] Plaintiff objects to Defendant's request that the Court take judicial notice of the HAMP Handbook. Although the Handbook is not an appropriate subject of judicial notice, Plaintiff does not question its authenticity, and the Court may consider materials in the record on summary judgment, including documents. Fed. R. Civ. P. 56(c). The Court otherwise grants the parties' requests for judicial notice.

7

application, and it is not clear whether the HAMP Handbook allows Defendant to deem an application "withdrawn" because an applicant fails to provide responsive documents.  (Dolan Decl. Ex. E, F, G.)  The Handbook allows a servicer such as Defendant to determine a borrower ineligible for HAMP if a borrower is unresponsive to requests for documentation, and ineligible loans do not generate a 30-day foreclosure hold.  However, Plaintiff provided evidence that she did respond with documents, and the HAMP sections cited by Defendant do not address the difference, if any, between a denial and a withdrawal.

Defendant points out that there is no private action to enforce HAMP.  "Numerous district courts within the Ninth Circuit have ruled that there is no express or implied private right of action to sue lenders or loan servicers for violation of HAMP."  Cleveland v. Aurora Loan Servs., LLC, Case No. 11-0773 PJH, 2011 U.S. Dist. LEXIS 55168, at *9 (N.D. Cal. May 24, 2011) (noting also that because alleged HAMP violations were not actionable, they could not be used to support a claim under California Business & Professions Code § 17200); Church v. Wells Fargo Bank, N.A., Case No. 13-166 MMC, 2013 U.S. Dist. LEXIS 311112, at *1-*2 (N.D. Cal. Mar. 6, 2013)  (dismissing state law claim to the extent it included a claim that the defendants violated HAMP because "no private cause of action exists under HAMP").  Plaintiff's fraud claim does not challenge Defendant's application of HAMP, but rather Defendant's statements about what would happen if her loan application was denied.  State law claims are not precluded simply because a lender or servicer describes them as an "end-run" around HAMP.  Sutcliffe v. Wells Fargo Bank, N.A., 283 F.R.D. 533, 554 (N.D. Cal. 2012).

          2.    *Knowledge of Falsity and Intent to Induce Reliance*

Plaintiff's claim cannot survive summary judgment, however, because Plaintiff has not pointed to sufficient evidence from which a jury could reasonably infer that Brower knew that his statements were false or intended to deceive Plaintiff or to induce reliance.  Plaintiff presented no direct evidence of Brower's knowledge or intent.  Instead, Plaintiff asserts that the Court can infer scienter and fraudulent intent because: (1) Brower did not explain to Plaintiff the difference between denial of an application and withdrawal of an application; (2) the Non-Approval Letter was dated September 30, 2011 but not sent until October 4, 2011; (3) the Non-Approval Letter did not state

8

that a trustee's sale would be conducted without notice in less than thirty days; (4) a September 30, 2011, letter from Defendant stated that Plaintiff would receive phone calls and notices from the collection department but Plaintiff did not receive such calls; (5) Brower told Plaintiff that she could apply directly to him if she did not submit documents in time; and (6) Defendant had a record of wrongfully denying modifications, including improperly claiming non-receipt of requested documents.  According to Plaintiff, Defendant knew that if it deemed a request withdrawn, it would not have to give Plaintiff a foreclosure hold.  Plaintiff also argues that Defendant had an incentive to rush to foreclose because if it did not foreclose before October 15, 2011, it would have had to record a new notice of default, which would have significantly delayed Defendant's ability to foreclose and given Plaintiff additional time to avoid foreclosure.

Although intent may be established by inference from the acts of the parties, Santoro v. Carbone, 22 Cal. App. 3d 721, 727 (Cal. Ct. App. 1972), and the Court must give Plaintiff the benefit of all reasonable inferences on summary judgment, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), Plaintiff's circumstantial evidence of scienter and intent falls short of raising a triable issue of fact.  As Defendant points out, in the absence of an economic motive for Defendant's actions, Plaintiff has a heavy burden of coming forward with persuasive evidence to avoid implausibility on summary judgment.  Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1470 (9th Cir. 1987).  Plaintiff has shown no plausible reason for Defendant to rush to foreclose.  At the hearing, the attorney speaking on Plaintiff's behalf argued that Defendant had an incentive to deny Plaintiff a foreclosure hold because the property was worth more than the lien.  However, there is no evidence of this fact in the record, and no evidence that the value of the property would have changed if foreclosure were delayed.  Plaintiff also argues that Defendant had an incentive to deny Plaintiff a foreclosure hold because Defendant needed to foreclose before October 15, 2011, or it would have to record a new notice of default and face significant attendant delays.  The statute Plaintiff relies on, however, provides that had Defendant not sold the property by October 15, 2011, it would have to file a new notice of sale, not a new notice of default. Cal. Civ. Code § 2924g(c).  While Plaintiff may be correct that filing a new notice of default might have delayed Defendant's ability to foreclose by months, having to file a

9

notice of sale would not have provided Defendant with a strong motive to rush to foreclose because a trustee can sell a property within 20 days of a notice of sale. Cal. Civ. Code § 2924f.

Plaintiff's circumstantial evidence also fails to raise a triable issue that Brower knew that any of the statements he made were false or that he intended to induce reliance. That the Non-Approval letter did not mention foreclosure could occur within 30 days does not give rise to an inference of scienter or intent to defraud, nor does Brower's willingness to accept a renewed loan modification application directly from Plaintiff. Similarly, the September 30, 2011, letter from Brower stated that the "normal collections process" would resume "if appropriate;" it did not guarantee that Plaintiff would receive phone calls and notices from the collections department. That Brower did not explain the difference between denial and withdrawal, that there was a brief delay in sending the Non-Approval Letter, and that Defendant entered into a consent decree in April 2012 (in which it did not admit the allegations of the complaint) are insufficient bases for a jury to find in Plaintiff's favor on the scienter and intent elements of fraud.[2]

### 3. *Other Issues*

Because Plaintiff has not presented a triable issue as to scienter and intent to induce reliance, the Court need not reach Plaintiff's arguments about the other elements of fraud. Moreover, the Court need not address the parties' arguments about whether Plaintiff misrepresented her income on her loan modification application, the relevance of which Defendant did not adequately explain.

### IV. Conclusion

The Court grants Defendant's motion for summary judgment.

**IT IS SO ORDERED.**

---

[2] Plaintiff argues that she need not show scienter under an intentional misrepresentation theory because she alleged negligent misrepresentation and false promise. Both of these theories, however, require a plaintiff to prove intent to induce reliance. See Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal. App. 4th 153, 159 (Cal. Ct. App. 1991) ("To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, . . . that it was intended to deceive or induce the promise to do or not do a particular thing."); Friedman v. Merck & Co., 107 Cal. App. 4th 454, 476 (Cal. Ct. App. 2003) (noting that one of the elements of negligent misrepresentation is that the "representation must have been made with the intent to induce plaintiff to rely upon it").

Dated: May 6, 2014

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge